1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8 | GULLIVER'S TAVERN, INCORPORATED

9 | d/b/a FOXY LADY,

10 |            Plaintiff,

11 |     v.

12 | FOXY LADY INC. d/b/a FOXY LADY

13 | COFFEE,

14 |           Defendant.

Case No. 3:23-cv-05027-TMC

ORDER DENYING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION

15
16

Before the Court is Plaintiff Gulliver's Tavern, Inc.'s motion for default judgment and

17

permanent injunction. Dkt. 13. For the reasons stated below, the Court DENIES the motion.

18

## I.    BACKGROUND

19

Gulliver's Tavern, Inc., d/b/a Foxy Lady ("Foxy Lady") operates the Foxy Lady adult

20

entertainment club in Providence, Rhode Island, where it provides "exotic dance, bar, and

21

restaurant services." Dkt. 1 ¶¶ 8, 13. Foxy Lady owns a trademark of its name, "FOXY LADY"

22

(U.S. Reg. No. 2,809,938), which was registered on February 3, 2004. Dkt. 14-1 at 2. Foxy Lady

23

alleges it has the exclusive right to use the mark "in connection with exotic dance performances,

24

bar services, and restaurant services." Dkt. 1 ¶ 12.

ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION -
1

1

2

3

Defendant Foxy Lady, Inc. d/b/a Foxy Lady Coffee ("Foxy Lady Coffee") is a self-described "bikini barista establishment" that operates a "unique coffee house and espresso drive thru concept" in Washington state. Dkt. 14-4 at 2.

4

5

Foxy Lady alleges that Foxy Lady Coffee operates "three separate businesses" that impermissibly use Foxy Lady's trademark:

6

7

8

9

> Foxy Lady Latte has three locations and is, upon information and belief, a coffee shop with baristas that dress in provocative lingerie. Foxy Lady Bikini Bar is located in Tacoma. [Foxy Lady Coffee] advertises that it has a "Full Service Bar: Ice Cold Beer on draft, Wine, & Spirits!" It serves breakfast, lunch, and dinner and features servers that dress in provocative lingerie. Foxy Lady Café has not yet opened and will be located in Centralia, Washington. Upon information and belief, it will be a full-service restaurant that may serve alcohol with servers that dress in provocative lingerie.

10

11

12

Dkt. 1 ¶¶ 16–18. Foxy Lady Coffee owns trademark registrations for "FOXY LADY LATTE" (U.S. Reg. No. 5,427,417) and "FOXY LADY CAFÉ" (U.S. Reg. Nos. 5,427,415 and 5,417,545). *Id.* ¶ 20. These registrations "are for coffee and coffee shops." *Id.*

13

14

15

16

17

18

19

Foxy Lady claims that Foxy Lady Coffee's advertisement of its employees' "scantily clad" dress and its use of "bikini bar" in the name of its Tacoma business create "confusion with Foxy Lady's use of its mark." *Id.* ¶¶ 19, 21. Specifically, Foxy Lady alleges that "[Foxy Lady Coffee's] use of [Foxy Lady's] marks has created a likelihood of confusion among the consuming public who may falsely believe that [Foxy Lady Coffee's] business is associated with [Foxy Lady] or that [Foxy Lady] sponsors or approves of [Foxy Lady Coffee's] services or commercial activities." *Id.* ¶ 34; *see also id.* ¶ 22.

20

21

22

23

Foxy Lady brings federal claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114 and unfair competition under 15 U.S.C. § 1125(a), as well as a common law claim for trademark infringement and a state law claim alleging a violation of the Washington Consumer Protection Act, RCW § 19.86.020, in connection with Defendant's alleged infringing

24

uses of Foxy Lady's mark. *Id.* ¶¶ 28–52. Foxy Lady also requests cancellation of Foxy Lady Coffee's trademarks for "FOXY LADY LATTE" (U.S. Reg. No. 5,427,417) and "FOXY LADY CAFÉ" (U.S. Reg. Nos. 5,427,415 and 5,417,545). *Id.* ¶¶ 53–76.

As to its trademark infringement claim, Foxy Lady alleges Foxy Lady Coffee intended to profit from its use of the "Foxy Lady" name, but alleges, in the alternative, that Foxy Lady Coffee is also liable for negligent infringement because "there is no *mens rea* for trademark infringement." *Id.* ¶¶ 22–23. Foxy Lady also claims that the same conduct constituted unfair competition because it was "intentional conduct by [Foxy Lady Coffee] to make false designations of origin and false descriptions about [Foxy Lady Coffee's] services and commercial activities." *Id.* ¶ 38. For its common law trademark infringement claim, Foxy Lady alleges that "use of marks identical to [Foxy Lady's] trademarks infringes [Foxy Lady's] common law rights in its trademarks, and this use is likely to cause confusion, mistake, or deception among consumers, who will falsely believe that [Foxy Lady Coffee's] services originate from, or are affiliated with, or endorsed by [Foxy Lady]." *Id.* ¶ 42. For its Washington state law claim, Foxy Lady alleges that Foxy Lady Coffee "deceived and harmed the public, and . . . knew or should have known that its conduct was unfair, deceptive, and harmful to the public." *Id.* ¶ 49. Finally, Foxy Lady requests that the Court cancel Foxy Lady Coffee's trademarks for "FOXY LADY LATTE" and "FOXY LADY CAFÉ" because their use "dilutes [Foxy Lady's] mark through blurring in that it contains the entirety of [Foxy Lady's] mark, adding only the generic term[s]" "latte" and "café." *Id.* ¶¶ 55, 63, 71.

For relief, Plaintiff seeks a permanent injunction to prevent Defendant from continuing to infringe its trademark rights; cancellation of Defendant's trademarks for "FOXY LADY LATTE" and "FOXY LADY CAFÉ"; statutory damages in the amount of $500,000.00; post-judgment interest; and attorney's fees and costs in the amount of $55,594.90. Dkt. 13 at 19.

Plaintiff filed the Complaint on January 9, 2023. Dkt. 1. On February 13, 2023, it filed an affidavit signed by its process server, who states that he served process on an individual who was "designated by law to accept service of process on behalf of" Defendant on January 20, 2023. Dkt. 6. Foxy Lady Coffee did not make an appearance, and Foxy Lady moved for default, which the Court entered on February 14, 2023. Dkt. 7, 9. On July 18, 2023, Foxy Lady filed the instant motion asking the Court to enter default judgment against Foxy Lady Coffee. Dkt. 13. The case was transferred to the undersigned judge on August 30, 2023. Dkt. 17.

## II.   DISCUSSION

### A.   Legal Standards

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The Rule authorizes the Court to enter default judgment against a party that fails to appear or otherwise defend in an action. Fed. R. Civ. P. 55. In deciding motions for default judgment, courts take "'the well-pleaded factual allegations' in the complaint 'as true,' 'except those relating to the amount of damages.'" *Rozario v. Richards*, 687 Fed. Appx. 568, 569 (9th Cir. 2017) (first quoting *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); then quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (internal citations omitted)); Fed. R. Civ. P. 8(b)(6). The court also does not accept the truth of statements in the complaint that amount to legal conclusions. *DIRECTV, Inc.*, 503 F.3d at 854. "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

The "starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts weigh the following factors in deciding motions for default judgment:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72; *see NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616–17 (9th Cir. 2016) (suggesting that district courts "weigh" the *Eitel* factors). District courts' decisions on motions for default judgment are discretionary. *See NewGen, LLC*, 840 F.3d at 616 ("We review . . . the grant of a default judgment for abuse of discretion."). Failure to establish the second and third factors is dispositive and requires denial of the motion. *See Cripps*, 980 F.2d at 1268 (vacating default judgment where "the default judgment [was] legally insupportable"); *United States ex rel. Lesnik v. Eisenmann SE*, No. 16-CV-01120-LHK, 2021 WL 4243399, at *11 (N.D. Cal. Sept. 17, 2021) (noting that "failure to satisfy the second and third *Eitel* factors is sufficient to deny a motion for default judgment").

## B.    Jurisdiction

Before entering a default judgment, a court must consider whether it has subject-matter jurisdiction over the claims asserted and personal jurisdiction over the defendants. *Masonry Sec. Plan of Wash. v. Radilla*, No. 2:20-00350-RAJ, 2021 WL 3602517, at *2 (W.D. Wash. Aug. 13, 2021) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).

### 1.    *Subject-Matter Jurisdiction*

United States district courts have original jurisdiction over claims arising out of federal laws relating to trademarks and unfair competition claims that are "joined with a substantial and related claim under the . . . trademark laws." 28 U.S.C. § 1338(a, b). Accordingly, the Court has subject-matter jurisdiction over Plaintiff's federal trademark infringement and unfair competition claims. In addition, the Court has supplemental jurisdiction over Plaintiff's state law claims, as

they concern the same trademark infringement allegations, and thus "form part of the same case or controversy" as Plaintiff's federal claims. 28 U.S.C. § 1367(a).

### 2. *Personal Jurisdiction*

In determining whether the Court has personal jurisdiction over a defendant, it must consider whether the plaintiff properly served process on them. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Service of process is governed by Federal Rule of Civil Procedure 4, which is "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Com. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). Under Federal Rule of Civil Procedure 4(h)(1)(A), a party may serve a domestic corporation in accordance with Federal Rule of Civil Procedure 4(e)(1), which in turn allows for service to be made under the law of the state in which the presiding district court is located. RCW 4.28.080(9) allows for service on companies by delivering copies of summons to the company's "registered agent."

Plaintiff argues that service was properly made on Defendant's "registered agent." Dkt. 13 at 9. To support this contention, Plaintiff cites to the affidavit of its process server, who stated that he served summons on Karen Spino, who is "designated by law to accept service of process on behalf of Foxy Lady, Inc[.]" Dkt. 6. Under "additional information," the process server continues: "I delivered the documents to Karen Spino who indicated they were the person authorized to accept with identity confirmed by subject stating their name." *Id.* Accordingly, Plaintiff has shown that they served process on Defendant's "registered agent" and that service of process was proper.

A federal court must also have either general or specific personal jurisdiction over the defendant. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). A court has general personal jurisdiction over a corporate defendant in a state where "the corporation is fairly regarded as at

home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). A corporation is "at home" in its "place of incorporation" and "principal place of business." *Id.* at 137. Washington is both Foxy Lady Coffee's place of incorporation and principal place of business, Dkt. 1 ¶ 4; therefore, the Court has general personal jurisdiction over Foxy Lady Coffee.

## C.   Default Judgment

As stated, the Court's decision is governed by the *Eitel* factors. *Eitel*, 782 F.2d at 1471–72. Because the Court holds that Foxy Lady's Complaint is not legally sufficient, it will limit its discussion to the second and third factors. *See Cripps*, 980 F.2d at 1268; *United States ex rel. Lesnik*, 2021 WL 4243399, at *11.

### 1.   Merits of Plaintiff's Claims and Sufficiency of the Complaint

"The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together." *Curtis*, 33 F. Supp. 3d at 1211. The two factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Padded Spaces LLC v. Weiss*, No. C21-0751JLR, 2022 WL 2905887, at *3 (W.D. Wash. July 22, 2022) (quoting *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)). The Court concludes that Foxy Lady fails in both regards for all its claims.[1]

To prevail on a trademark infringement claim under the Lanham Act, Foxy Lady must prove: "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." *Dep't of Parks and Recreation for Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d

---

[1] Since all of Foxy Lady's claims are governed by the trademark infringement standard, *see* Dkt. 13 at 11–13, the Court analyzes the sufficiency of the pleadings and the merits of all claims in the same analysis.

1118, 1124 (9th Cir. 2006) (citing *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir.1985) (en banc)).

As to proof of ownership, "federal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (citing 15 U.S.C. §§ 1057(b), 1115(a)). If a plaintiff shows federal registration of a mark, the burden shifts to the defendant to show that "the mark is not protectable." *Id.* Here, Plaintiff alleges that it has a federal mark registration for "FOXY LADY," Dkt. 1 ¶ 9, and has produced evidence of the mark's registration. Dkt. 14-1 at 2. Accordingly, Plaintiff has shown a protectable ownership interest.

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). Because Foxy Lady alleges that consumers of Foxy Lady Coffee are likely to be confused about its association with Foxy Lady, *see* Dkt. 1 ¶ 22, 34, Foxy Lady appears to allege its trademark claim under a theory of "forward confusion." *See Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017) ("Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder.").

The plaintiff must show that the defendant's "actual practice is likely to produce confusion in the minds of consumers." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004); *see also Murray v. Cable Nat'l Broad. Co.,* 86 F.3d 858, 860 (9th Cir. 1996) ("The confusion must be probable, not simply a possibility." (internal quotation marks omitted)). Courts in the Ninth Circuit consider eight factors in making this determination:

[1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines.

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). The *Sleekcraft* factors are "'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1030 (9th Cir. 2010). "[T]he relative importance of each individual factor" is "case-specific." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999); *see also Rearden*, 683 F.3d at 1209 ("A determination may rest on only those factors that are most pertinent to the particular case before the court."). The factors "present[] a highly factual inquiry." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1161 (9th Cir. 2021).

Foxy Lady has not shown a likelihood that "reasonably prudent" consumers of Foxy Lady Coffee in Tacoma, Washington are likely to confuse its services with Foxy Lady's adult entertainment services in Providence, Rhode Island. Foxy Lady's motion focuses on the "proximity" and "similarity" factors, Dkt. 13 at 12, which are "particularly probative" in the Ninth Circuit. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017), *abrogated on other grounds by Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020); *see also Brookfield*, 174 F.3d at 1054 ("The similarity of the marks will always be an important factor."); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000) ("Obviously, the greater the similarity between the two marks at issue, the greater the likelihood of confusion.").

As to similarity, Foxy Lady argues:

[Foxy Lady Coffee] uses the entirety of [Foxy Lady's] . . . mark, combining it with the generic terms "coffee," "café," and "bikini bar." Generic terms do not reduce

ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION - 9

1
2
3

> consumer confusion; "bikini bar" makes confusion more likely since consumers
> expect to see scantily-clad women in a full-service bar at Plaintiff's establishment.
> [Foxy Lady Coffee] also operates branded Instagram pages with images of women
> in various stages of undress, including fully topless, in a manner that further creates
> confusion with [Foxy Lady].

Dkt. 13 at 8. Moreover, "[Foxy Lady's] federal registration covers both live performances for

adult audiences and 'restaurant services and bar services.' [Foxy Lady Coffee's] business uses

the FOXY LADY mark to combine both manners of uses—it advertises scantily clad women

selling food and beverages to their customers." *Id.* at 12. According to Foxy Lady, the marks are

"legally identical." *Id.*

Foxy Lady emphasizes cases holding that the addition of "generic term[s]" to another's

trademarked name "is of no significance," Dkt. 13 at 12. *See, e.g., Electropix Inc. v. Liberty

Livewire Corp.*, 178 F. Supp. 2d 1125, 1132 (C.D. Cal. 2001) ("[A] subsequent user may not

avoid likelihood of confusion by appropriating another's entire mark and adding descriptive or

non-distinctive matter to it." (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks*, § 23:50

(4th ed. 2000))). However, "[t]he use of identical dominant words does not automatically mean

that two marks are similar . . . ." *Id.* (quoting *Luigino's, Inc. v. Stouffer Corp.,* 170 F.3d 827, 830

(8th Cir. 1999)). Instead, in assessing the similarity of marks, courts evaluate "their sight, sound,

and meaning." *Brookfield*, 174 F.3d at 1054. The marks are considered "in their entirety and as

they appear in the marketplace." *GoTo.com*, 202 F.3d at 1206; *see also M2 Software, Inc. v.

Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005) ("[T]he trademark is not judged by an

examination of its parts, but rather the validity and distinctiveness of a composite trademark is

determined by viewing the trademark as a whole, as it appears in the marketplace." (internal

quotations omitted)); *Monster Energy Co. v. Pelmir Enter. Inc.*, No. 2:22-CV-00524-LK, 2023

WL 3075653, at *5 (W.D. Wash. Apr. 25, 2023) (considering the appearance of two marks –

including color, font, letter case, and logos – in holding they were too dissimilar to cause

reasonable consumer confusion). "[S]imilarities [are] weighed more heavily than differences." *Brookfield*, 174 F.3d at 1054.

Plaintiffs submitted into evidence Defendant's trademark certificates, as well as printouts of each businesses' website containing logos using the marks.

 

Foxy Lady does not address the similarity of the marks' appearance, sound, or meaning as they appear "in the marketplace" in its motion. While the texts of the marks are similar and each features comparable silhouettes, there are several differences that diminish any likelihood of confusion among consumers: Foxy Lady's logo (left) clearly notes its location in capital letters directly below its name and Foxy Lady Coffee prominently features a coffee cup in the center of its logo (right) directly above the word "latte." The logos also use different colors and fonts: Foxy Lady's name is superimposed against a black backdrop while Foxy Lady Coffee's background is orange and white. Foxy Lady's text is white and pink while Foxy Lady Coffee's is black.[2] The letters in Foxy Lady Coffee's logo are thinner than those in Foxy Lady's and use a different font. Foxy Lady Coffee also uses largely the same logo on coffee products, one of which has a yellow background:

---

[2] In another part of the website, the logo is superimposed on a grey rock wall. Dkt. 14-4.

ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION - 11



These differences go to the logos' sight and meaning: Foxy Lady Coffee emphasizes a service and product that the other does not while Foxy Lady notes its location, which the other does not. *See Peninsula Cmty. Health Servs. v. Olympic Peninsula Health Servs. PS*, 3:20-cv-05999-BHS, 2023 WL 2555498, at *10 (W.D. Wash. Mar. 17, 2023) (businesses' identification of "the different geographic areas in which their services are provided" in their trademarks was relevant to their "meaning"). Viewed as a whole, the differences between the two marks as they are used are sufficiently numerous and varied to dominate over any similarities. The similarity factor weighs against Foxy Lady.

The "proximity"—or relatedness, *Brookfield*, 174 F.3d at 1055—of the services provided by each party is also particularly relevant to this case given that both businesses feature employees in scantily clad dress. "The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011). "For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350.

ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION - 12

This analysis is highly fact specific and competing products or services need not be identical to be considered sufficiently "related." *See, e.g.*, *Brookfield*, 174 F.3d at 1056 ("Here, both companies offer products and services relating to the entertainment industry generally, and their principal lines of business both relate to movies specifically and are not as different as guns and toys."); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 153–55 (9th Cir. 1963) (concluding that beer and whiskey are sufficiently similar products for purposes of the relatedness analysis). Nor is it necessary for the senior mark holder to be a direct competitor of the junior mark holder; "[i]nstead, [r]elated goods (or services) are those which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Ironhawk Techs.*, 2 F.4th at 1163 (internal quotations and citation omitted). Foxy Lady argues that the services provided by Foxy Lady Coffee are sufficiently similar to Foxy Lady's "live performances for adult audiences and 'restaurant services and bar services,'" as Foxy Lady Coffee itself "advertises scantily clad women selling food and beverages to their customers." Dkt. 13 at 12. While Foxy Lady Coffee features products—namely, coffee—that Foxy Lady does not, the businesses have some degree of similarity, given that both attract customers by featuring scantily clad employees. This factor weighs slightly in favor of a finding of likelihood of confusion.

Perhaps the most relevant factor in this case, however, is the vast geographic distance between the businesses. The Ninth Circuit and other courts have found that significant geographic isolation strongly weighs against a finding of likelihood of confusion.[3] In *Brookfield*,

---

[3] These decisions have found geographic distance to be relevant to different *Sleekcraft* factors. However, the Court need not decide which factor this discussion is most appropriately couched in, since the factors are "pliant" and even factors outside of the test can be considered if they are relevant to the ultimate determination of likelihood of confusion. *Fortune Dynamic, Inc.,* 618 F.3d at 1030; *see Network Automation*, 638 F.3d at 1145 ("[T]he list is not exhaustive, and . . .

the Ninth Circuit stated that "[e]ven where there is precise identity of a complainant's and an alleged infringer's mark, there may be no consumer confusion—and thus no trademark infringement—if the alleged infringer is in a different geographic area or in a wholly different industry." 174 F.3d at 1054; *see also Fairway Foods v. Fairway Mkts.*, 227 F.2d 193, 196 (9th Cir. 1955) ("[T]here has been no confusion and . . . there is no likelihood of confusion because of the use by both parties of the word 'Fairway'. Neither party sells or tries to sell to any customer who buys from the other party. Neither party sells or tries to sell or offers to sell anything within the same territory that the other does business."); *Growler Station, Inc. v. Foundry Growler Station, LLC*, No. SA CV 18-0433-DOC, 2018 WL 6164301, at *6 (C.D. Cal. July 19, 2018) (holding that the proximity factor weighed against likelihood of confusion, even though the parties "offere[ed] similar services and products," because the plaintiff did not "allege or put forward any evidence that it offers its products or services in the state of Georgia," where the defendant's only store was located (citation omitted)). The *Brookfield* court cited two decisions in support of its statement: one that "permitt[ed] concurrent use of 'Weiner King' as a mark for restaurants featuring hot dogs in New Jersey and 'Wiener King' as a mark for restaurants in North Carolina" and another that "permitt[ed] concurrent use of 'PINOCCHIO'S' as a service mark for restaurants in Maryland and 'PINOCCHIOS' as a service mark for restaurants elsewhere in the country." *Id.* (first citing *Weiner King, Inc. v. Wiener King Corp.,* 615 F.2d 512, 515–16, 521–22 (C.C.P.A.1980); then citing *Pinocchio's Pizza Inc. v. Sandra Inc.,* 11 U.S.P.Q.2d 1227, 1228, 1989 WL 297867 (T.T.A.B.1989)).

Moreover, citing *Brookfield*, another court in this district concluded that there was no likelihood of confusion for a trademark infringement claim brought by a restaurant named

---

[o]ther variables may come into play depending on the particular facts presented." (internal quotations and citations omitted)).

"BOCBOC Chicken Delicious" against a fried chicken restaurant doing business as "Bok a Bok," in large part because the two businesses "operate[d] on opposite coasts" (one in western Washington, and the other in New York and New Jersey) and the plaintiff did not provide evidence that either planned "to expand outside their geographically distant operating areas." *See BBC Group NV LCC v. Island Life Restaurant Group LLC*, 413 F.Supp.3d 1032, 1039–40, 1044 (W.D. Wash. 2019). Here, Foxy Lady Coffee only has current and planned locations in Washington state, *see* Dkt. 1 ¶ 7, while Foxy Lady's only location is in Providence, Rhode Island, *see id.* ¶ 6. Foxy Lady does not allege that it sells or tries to sell products or services in Washington or anywhere outside of its one location in Rhode Island and does not apprise the Court of any plans to expand closer to Washington. The "isolation" of the businesses weighs strongly against a likelihood of confusion; a "reasonably prudent" customer of Foxy Lady Coffee in Washington is not likely to suspect that the products (or experiences) they seek out there relate to a business on the other side of the country that has made no attempt to do business in Washington.

Geographic isolation is also relevant to the "likelihood of expansion" factor, which asks "whether existence of the allegedly infringing mark is hindering the plaintiff's expansion plans." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005). As stated, Foxy Lady does not allege that it has any intention to expand beyond its Rhode Island location. This factor also weighs against Foxy Lady. *See id.* (holding that the likelihood of expansion factor weighed against a finding of likelihood of confusion because the plaintiff did not "adduce any concrete evidence of expansion plans").

As stated, the *Sleekcraft* factors are "pliant," and courts determine which factors are most relevant based on the facts of each case. *Fortune Dynamic, Inc.,* 618 F.3d at 1030; *Brookfield*, 174 F.3d at 1054. The Court bears in mind that the ultimate question to be answered is "whether

a *reasonably prudent* consumer in the marketplace is likely to be confused as to the origin or source of the goods or services" at issue. *Rearden LLC*, 683 F.3d at 1209 (emphasis added); *see also Ironhawk Techs.*, 2 F.4th at 1161 ("[T]he factors are intended to guide the court in assessing the basic question of likelihood of confusion." (internal quotations omitted)). This Court finds, as others have in similar cases, that the geographic isolation of the businesses at issue is especially relevant. While there are similarities in the services that each business provides, the vast geographical distance between the parties and the significant differences in the appearance and meaning of their marks, both of which the Ninth Circuit has emphasized are important considerations, present sufficient reason for the Court to conclude that Foxy Lady has not sufficiently pled or shown a likelihood of consumer confusion, even taking its well-pleaded factual allegations as true. *See Brookfield*, 174 F.3d at 1054 ("[I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the [*Sleekcraft*] factors.").[4]

Accordingly, Foxy Lady has not stated a claim upon which it may recover and therefore fails to establish the second and third *Eitel* factors for each of its claims. Because its failure to do so is dispositive, the Court denies the motion for default judgment. *See Cripps*, 980 F.2d at 1268; *United States ex rel. Lesnik*, 2021 WL 4243399, at *11.

### III.    CONCLUSION

For the foregoing reasons, Foxy Lady's motion for default judgment and permanent injunction, and its request for attorney's fees and costs therein, is DENIED without prejudice. Dkt. 13. The Court GRANTS Foxy Lady leave to file an amended complaint within 21 days of entry of this order. *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir.

---

[4] Of the remaining *Sleekcraft* factors, Foxy Lady only addresses briefly, and without citation, the strength of the mark and the use of marketing channels. *See* Dkt. 13 at 12.

2020) (stating that leave to amend is to be "granted with extreme liberality"). If, after proper service of the amended complaint, Foxy Lady Coffee again defaults, Foxy Lady may then file a new motion for entry of default, followed by a new motion for default judgment.

…

Dated this 4th day of December, 2023.

Tiffany M. Cartwright
United States District Court Judge