UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GULLIVER'S TAVERN, INCORPORATED d/b/a FOXY LADY,<br><br>                        Plaintiff,<br><br>     v.<br><br>FOXY LADY INC. d/b/a FOXY LADY COFFEE,<br><br>                        Defendant. | Case No. 3:23-cv-05027-TMC<br><br>ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT |

### I.   INTRODUCTION AND BACKGROUND[1]

Plaintiff Gulliver's Tavern, Inc. ("Foxy Lady") owns and operates the Foxy Lady adult entertainment club in Providence, Rhode Island, which holds itself out to be the "#1 [strip club] in New England." *See* Dkt. 39-3 at 3 (website printout for www.foxyladyri.com).

Foxy Lady features exotic dance performances and restaurant and bar services and owns a trademark for "FOXY LADY" (U.S. Reg. No. 2,809,938) for these services. *See* Dkt. 27 ¶ 9,

---

[1] Because the facts relevant to this motion are largely the same as for the Court's order denying Foxy Lady's first motion for default judgment, the Court only recounts the basic background of the case and new allegations in Foxy Lady's second amended complaint while assuming familiarity with other facts common to the operative and original complaints.

ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT - 1

59. Foxy Lady's second amended complaint reiterates that it is "New England's oldest and most well-known strip club" and that it receives "worldwide media attention" from as far away as internet news websites in New Zealand. *See* Dkt. 27 ¶ 14–15 (highlighting news articles covering Providence's closure and revocation of Foxy Lady's license after three of its workers were arrested on prostitution charges). But Foxy Lady says being "world-renowned and famous," Dkt. 27 ¶ 14, has come at a price; it alleges that patrons of Defendant Foxy Lady Coffee, a "bikini barista establishment," *see* Dkt. 27-5 at 2, with several locations in western Washington[2], are likely to confuse the coffee stands with its Rhode Island strip club[3], and, therefore, Foxy Lady Coffee must be held liable for trademark infringement and must have its own trademarks cancelled. Among other reasons, Foxy Lady alleges consumers of Foxy Lady Coffee are likely to be "confused" by the fact that its Instagram page "features images of women in various stages of undress, including fully topless," similar to the manner in which Foxy Lady uses its mark. *Id.* ¶ 30. In so doing, Foxy Lady Coffee is allegedly "trading off the multiple decades-long cultivation of goodwill that the Plaintiff has engaged in." *Id.* ¶ 31.

Foxy Lady also alleges that, while Foxy Lady Coffee owns a trademark registration for FOXY LADY LATTE (U.S. Reg. No. 5,427,417) and two registrations for FOXY LADY CAFE (U.S. Reg. No. 5,427,415 and U.S. Reg. No. 5,417,545), these registrations are only "for coffee and coffee shops" and Foxy Lady Coffee fraudulently concealed its use of those marks for "far

---

[2] Foxy Lady Coffee has locations in Tacoma, Arlington, Burlington, and Mount Vernon and one planned location in Centralia, Washington. Dkt. 27 ¶ 7. Its locations have different names: Foxy Lady Bikini Bar, Foxy Lady Latte, and Foxy Lady Café (the planned location), *id.*; the Court will refer to the business as a whole as Foxy Lady Coffee for the remainder of this order.

[3] The trademark is for "for entertainment in the nature of live performances for an adult audience, namely exotic dance performances and restaurant services and bar services." Dkt. 27 ¶ 9.

ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT - 2

more than coffee" from the U.S. Patent and Trademark Office ("USPTO") when it obtained the registrations. *Id.* ¶ 26.

Foxy Lady first filed this lawsuit on January 9, 2023 and moved for default judgment after Foxy Lady Coffee failed to appear or respond to its complaint. Dkt. 1, 13. The Court denied the motion, but granted Foxy Lady leave to re-file an amended complaint and new default judgment motion to address the deficiencies identified in the order. Dkt. 20. Accepting the Court's invitation, Foxy Lady filed an amended complaint on December 26, 2023, and, with leave of court, filed a second amended complaint (the operative complaint) on April 2, 2024. Dkts. 21, 27. The operative complaint raises claims for trademark infringement under the Lanham Act (15 U.S.C. § 1114) and unfair competition under 15 U.S.C. § 1125(a), as well as a common law claim for trademark infringement and a state law claim alleging a violation of the Washington Consumer Protection Act, RCW § 19.86.020, in connection with Defendant's alleged infringing uses of Foxy Lady's mark. Dkt. 27 ¶¶ 37–63. Foxy Lady also requests cancellation of Foxy Lady Coffee's trademarks for "FOXY LADY LATTE" (U.S. Reg. No. 5,427,417) and "FOXY LADY CAFÉ" (U.S. Reg. Nos. 5,427,415 and 5,417,545) under 15 U.S.C. § 1064 for creating customer confusion with Foxy Lady's marks and for fraud on the USPTO. *See id.* ¶¶ 64–93.

For relief, Plaintiff seeks a permanent injunction to prevent Defendant from continuing to infringe its trademark rights; cancellation of Defendant's trademarks for "FOXY LADY LATTE" and "FOXY LADY CAFÉ"; and "compensatory, consequential, statutory, and punitive damages." *See* Dkt. 27 at 16–17; Dkt. 38 at 18.

Foxy Lady served the operative complaint on Foxy Lady Coffee on April 12, 2024, and, after Foxy Lady Coffee failed to timely appear or respond to the complaint, the Clerk of Court entered default again. Dkt. 33. Foxy Lady filed this second attempt to seek default judgment on

ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT - 3

July 2, 2024, and the motion was noted for the same day. Dkt. 38. For the following reasons, the motion is denied.

## II.   DISCUSSION

### A.   Legal Standards

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The Rule authorizes the Court to enter default judgment against a party that fails to appear or otherwise defend in an action. Fed. R. Civ. P. 55. In deciding motions for default judgment, courts take "'the well-pleaded factual allegations' in the complaint 'as true,' 'except those relating to the amount of damages.'" *Rozario v. Richards*, 687 Fed. Appx. 568, 569 (9th Cir. 2017) (first quoting *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); then quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (internal citations omitted)); Fed. R. Civ. P. 8(b)(6). The court also does not accept the truth of statements in the complaint that amount to legal conclusions. *DIRECTV, Inc.*, 503 F.3d at 854. "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

The "starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts weigh the following factors in deciding motions for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72; *see NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616–17 (9th Cir. 2016) (suggesting that district courts "weigh" the *Eitel* factors). District courts' decisions on motions

for default judgment are discretionary. *See NewGen, LLC*, 840 F.3d at 616 ("We review . . . the grant of a default judgment for abuse of discretion."). Failure to establish the second and third factors is dispositive and requires denial of the motion. *See Cripps*, 980 F.2d at 1268 (vacating default judgment where "the default judgment [was] legally insupportable"); *United States ex rel. Lesnik v. Eisenmann SE*, No. 16-CV-01120-LHK, 2021 WL 4243399, at *11 (N.D. Cal. Sept. 17, 2021) (noting that "failure to satisfy the second and third *Eitel* factors is sufficient to deny a motion for default judgment").

**B.     Jurisdiction**

Before entering a default judgment, a court must consider whether it has subject-matter jurisdiction over the claims asserted and personal jurisdiction over the defendants. *Masonry Sec. Plan of Wash. v. Radilla*, No. 2:20-00350-RAJ, 2021 WL 3602517, at *2 (W.D. Wash. Aug. 13, 2021) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).

Because the grounds for and facts establishing jurisdiction are essentially the same here as they were for Foxy Lady's first motion, the Court incorporates its analysis from that order. *See* Dkt. 20 at 5–7. Foxy Lady has again provided sufficient evidence that it properly served Foxy Lady Coffee pursuant to Federal Rules of Civil Procedure 4(h)(1)(A) and 4(e)(1) by personal service on Foxy Lady Coffee's "registered agent." *See* Dkt. 30. The Court has subject matter jurisdiction over Foxy Lady's claims and personal jurisdiction over Foxy Lady Coffee.

**C.     Default Judgment**

Despite taking the opportunity to file another default judgment motion, Foxy Lady's new motion largely ignores the main reasons for the Court's denial of its first motion. *See* Dkt. 20 at 16 (noting that the *Sleekcraft* test allows courts to choose which factors are most relevant to a given case—and decide a case based only on "a subset of the factors"—and emphasizing the importance of geographic isolation and similarity of the meaning and appearance of the marks in

the marketplace). The Court will only address the issues that Foxy Lady contests in the instant motion and assumes it does not dispute the portions of the Court's analysis in its first order that it does not address.

As stated, the Court's decision is governed by the *Eitel* factors. *Eitel*, 782 F.2d at 1471–72. Because the Court holds that Foxy Lady's complaint is not legally sufficient, it will limit its discussion to the second and third factors. *See Cripps*, 980 F.2d at 1268; *United States ex rel. Lesnik*, 2021 WL 4243399, at *11.

    1.    *Merits of Plaintiff's Claims and Sufficiency of the Complaint*

"The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together." *Curtis*, 33 F. Supp. 3d at 1211. The two factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Padded Spaces LLC v. Weiss*, No. C21-0751JLR, 2022 WL 2905887, at *3 (W.D. Wash. July 22, 2022) (quoting *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)). The Court concludes that Foxy Lady fails in both regards for all its claims.

        a.    *Likelihood of Confusion – Trademark Infringement, Unfair Competition, and Washington CPA Claims*

To prevail on a trademark infringement claim under the Lanham Act, Foxy Lady must prove: "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." *Dep't of Parks and Recreation for Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006) (citing *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc)).

As discussed in the Court's first order, because Foxy Lady has provided evidence of federal registration for its trademark, it has a protectable ownership interest in it. *See* Dkt. 20 at 8. The Court turns to the second element.

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). As with its earlier complaint, Foxy Lady appears to be raising a "forward confusion" claim. *See Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017) ("Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder.").

The plaintiff must show that the defendant's "actual practice is *likely* to produce confusion in the minds of consumers." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004) (emphasis added); *see also Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996) ("The confusion must be probable, not simply a possibility." (internal quotation marks omitted)). Courts in the Ninth Circuit consider eight factors in making this determination:

> [1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines.

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). The *Sleekcraft* factors are "'pliant,' illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010). "[T]he relative importance of each individual factor" is "case-

specific." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999); *see also Rearden*, 683 F.3d at 1209 ("A determination may rest on only those factors that are most pertinent to the particular case before the court."). The factors "present[] a highly factual inquiry." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1161 (9th Cir. 2021). "No single factor is determinative. Rather, [i]t is the totality of facts in a given case that is dispositive." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 930 (9th Cir. 2014).

In its order denying Foxy Lady's first default judgment motion, the Court found the similarity and proximity factors, as well as the geographic isolation of the parties—which the Ninth Circuit has acknowledged as potentially relevant when there is great distance between the businesses, *see Brookfield*, 174 F.3d at 1054—to be the most important factors in this case. *See* Dkt. 20 at 10–16. As to similarity of the marks, the Court explained that trademarks must be considered "in their entirety and as they appear in the marketplace." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Foxy Lady acknowledges as much in its new motion, but then repeats the same argument the Court rejected in its first order without explaining why the marks are similar when considered in their entirety as they appear in the marketplace. *See* Dkt. 38 at 11–12.[4] Having been presented with no reason to depart from its earlier conclusion, the Court again finds that the similarity factor weighs against a finding of likelihood of confusion.

---

[4] Foxy Lady does challenge the Court's similarity analysis from the first order in a footnote in its operative complaint, *see* Dkt. 27 n.5, however, the Court declines to consider this argument since it was improperly made in the complaint instead of a motion. *See* LCR 7(b) ("The argument in support of [a] motion shall not be made in a separate document but shall be submitted as part of the motion itself."); *Indep. Towers of Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (noting that courts need not consider arguments that were not actually made in a party's brief). The Court also notes that Foxy Lady is incorrect that the Court's first order relied, by analogy, on *Monster Energy Co. v. Pelmir Enter., Inc.*, No. 2:22- cv-00524-LK, 2023 WL 3075653, at *5 (W.D. Wash. Apr. 25, 2023) in coming to its conclusion with respect to similarity.

Foxy Lady's new motion also largely fails to address the geographic isolation of the parties, even though the Court's earlier order emphasized that it was "[p]erhaps the most relevant factor in this case." *See id.* at 13–14; *see also Brookfield*, 174 F.3d at 1054 ("Even where there is precise identity of a complainant's and an alleged infringer's mark, there may be no consumer confusion—and thus no trademark infringement—if the alleged infringer is in a different geographic area or in a wholly different industry."). As part of its geographic isolation analysis, the Court relied on another decision of this District that found no likelihood of confusion where the two businesses at issue, as here, "operate[d] on opposite coasts" and "the plaintiff did not provide evidence that either planned 'to expand outside their geographically distant operating areas.'" *See* Dkt. 20 at 15 (quoting *BBC Group NV LCC v. Island Life Restaurant Group LLC*, 413 F.Supp.3d 1032, 1039–40, 1044 (W.D. Wash. 2019)); *see also Brookfield*, 174 F.3d at 1054 (favorably citing decisions where courts "permitt[ed] concurrent use of 'Weiner King' as a mark for restaurants featuring hot dogs in New Jersey and 'Wiener King' as a mark for restaurants in North Carolina" and that "permitt[ed] concurrent use of 'PINOCCHIO'S' as a service mark for restaurants in Maryland and 'PINOCCHIOS' as a service mark for restaurants elsewhere in the country").

Foxy Lady appears to respond to this portion of the Court's analysis, but only by stating that "[t]here is a strong likelihood Plaintiff will expand its business." Dkt. 38 at 14.[5] However, this is a classic "bare assertion" that fails to satisfy the pleading standard, *see Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); the Court does not know from this allegation whether Foxy Lady will "likely" expand to an area where it is reasonably likely to share a consumer base with Foxy Lady Coffee or whether it will expand down the street in Providence. Without (non-conclusory)

---

[5] Although Foxy Lady's motion does not cite to it, this allegation appears in Foxy Lady's operative complaint. *See* Dkt. 27 at 10.

ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT - 9

allegations of the former, this argument does not move the needle for Foxy Lady. *See Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 134 (2d Cir. 2004) (noting, as part of a "geographic proximity" analysis, that "[e]ven in this age of rapid communication and travel, plaintiff faces a high hurdle to demonstrate that a single restaurant in New Orleans and a single restaurant in New York City compete for the same customers"); *see also id.* ("In the restaurant industry, especially where individual restaurants rather than chains are competing, physical separation seems particularly significant to the inquiry into consumer confusion.").

Relatedly, Foxy Lady's conclusory allegations regarding its planned expansion do not change this Court's prior analysis regarding the *Sleekcraft* test's separate "likelihood of expansion" factor. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) (finding this factor "tilted" in favor of the defendant where the plaintiff only "expressed interest in expanding his product line" but failed to "present[] specific evidence related to this factor" while noting that "mere speculation is not evidence").

The Court is also unconvinced by Foxy Lady's insistence that its online presence, in the form of its website foxyladyri.com, bridges the gap between the businesses. Foxy Lady does not allege or provide any evidence that it sells products through its website (e.g., products that could be sent to Washington). *See* Dkt. 39-3. While it may be possible that Washingtonians seeking out adult entertainment businesses in Rhode Island would discover Foxy Lady through its website, this meager evidence of potential engagement does not show Foxy Lady has any meaningful commercial presence in Washington and does little to portend a "*likelihood*"—rather than a mere "possibility"—of consumer confusion between the parties' businesses. *See Murray,* 86 F.3d at 860 ("The confusion must be probable, not simply a possibility."); *see also Fairway Foods v. Fairway Mkts.*, 227 F.2d 193, 196 (9th Cir. 1955) ("[T]here has been no confusion and . . . there is no likelihood of confusion because of the use by both parties of the word 'Fairway'.

Neither party sells or tries to sell to any customer who buys from the other party. Neither party sells or tries to sell or offers to sell anything within the same territory that the other does business."); *Growler Station, Inc. v. Foundry Growler Station, LLC*, No. SA CV 18-0433-DOC, 2018 WL 6164301, at *6 (C.D. Cal. July 19, 2018) (holding that the proximity factor weighed against likelihood of confusion, even though the parties "offere[ed] similar services and products," because the plaintiff did not "allege or put forward any evidence that it offers its products or services in the state of Georgia," where the defendant's only store was located (citation omitted)); *cf. Surfvivor Media*, 406 F.3d at 634 (finding that the "marketing channels" factor "slightly favor[ed]" the plaintiff in part because the parties sold their products at the same stores in the same state). The Court again concludes that the parties' geographic isolation is particularly relevant to this case and weighs against a finding of likelihood of confusion.[6]

Relatedly, Foxy Lady is also incorrect that the parties' use of the internet for advertising on its own shows that the parties use shared marketing channels. *See* Dkt. 38 at 13. "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014). However, "because of the ubiquity of internet advertising, the shared use of the internet as a marketing channel 'does not shed much light on the likelihood of consumer confusion.'" *Home Comfort Heating & Air Conditioning v. Ken Starr, Inc.*, No. 8:18-cv-00469-JLS-DFM, 2018 U.S. Dist. LEXIS 217544, at *19–20 (C.D. Cal. July 24, 2018)

---

[6] The *Brennan's* decision noted that "a geographically remote mark may nevertheless gain protection in a distant market, at least where there is extensive advertising or evidence of *strong* reputation *in the distant market*." 360 F.3d at 134 (emphasis added). Many of the publications referenced in the complaint that have reported on Foxy Lady are located nowhere near Washington and there is no plausible allegation that any of these handful of news stories helped establish any meaningful "reputation" here. And being referred to in the news as "*New England's* oldest and most well-known strip club" does not evince a commercial presence in *Western Washington*. Dkt. 27 ¶ 15 (emphasis added).

(quoting *Network Automation*, 638 F.3d at 1151). Because, for the reasons discussed above, there are no allegations or evidence of meaningful overlap between the parties' customer bases, and because showing convergent use of the internet is not sufficient, the marketing channels factor weighs against a finding of likelihood of confusion. *See Network Automation*, 638 F.3d at 1151 (finding that the district court erred in determining that this factor weighed in favor of likelihood of confusion solely because both parties advertised on the internet); *cf. Surfvivor Media*, 406 F.3d at 634 (finding "minor overlap" in the marketing channels used by the parties where they both sold their products "at *Hawaiian* J.C. Penny stores" (emphasis added)); *Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, 364 F.Supp.3d 1194, 1209 (W.D. Wash. 2019) ("The available record supports an inference that the companies market similar services to homeowners *in Western Washington* using conventional advertising methods, and so use convergent marketing channels." (emphasis added)).

      The strength of the mark at issue is also relevant to the *Sleekcraft* test. "The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Brookfield*, 174 F.3d at 1058. "A mark's strength is evaluated in terms of its conceptual strength and commercial strength." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) (internal quotation marks omitted). The former concerns "the obviousness of its connection to the good or service to which it refers." *Id.* Courts "classify a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic." *Id.* Meanwhile, a mark's commercial strength depends on its "actual marketplace recognition." *Id.* Since this case involves a "forward confusion" claim, the Court "evaluate[s] the conceptual and commercial strength to determine whether a customer interested in" patronizing Foxy Lady Coffee "would be confused into thinking that" its products and

services are actually those of Foxy Lady. *See id.* Courts "adjudge a mark's strength by reference to the goods or services that it identifies, and as it appears in the marketplace." *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002) (internal quotation marks and citations omitted).

First, the Court concludes the Foxy Lady mark is "suggestive," as it "conveys an impression of" Foxy Lady's business "but requires the exercise of some imagination and perception to reach a conclusion as to [its] nature," *Brookfield*, 174 F.3d at 1058 n.19; the mark strongly suggests that it is an adult entertainment business but does not clearly convey the exact services offered.[7] Suggestive marks are presumptively weak, "barring some other determinant of the mark's strength, for example, actual marketplace recognition." *LA Canada Ventures, Inc. v. Mdalgorithms, Inc.*, No. 22-cv-07197-RS, 2024 WL 3643082, at *4 (N.D. Cal. Aug. 2, 2024) (citing *Brookfield*, 174 F.3d at 1058).

Foxy Lady argues, as to the "commercial strength" factor, that, even if the mark is weak, it is strengthened by its continuous use for 45 years. Dkt. 38 at 12; *see PlayMakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1281 (W.D. Wash. 2003) ("A mark may also acquire strength through its use in the marketplace, otherwise known [as] commercial strength; this acquired strength can be shown through length and manner of use of the mark, the amount and volume of advertising, and the volume of sales."). Consistent with the Court's reasoning as to the other factors, however, the Court agrees with decisions that have found that "to achieve the status of a strong mark, plaintiff must demonstrate distinctiveness in the *relevant* market, for if the mark is not recognized by the relevant consumer group, a similar mark will not deceive those consumers and thereby increase search costs." *See Brennan's*, 360 F.3d at 132 (citing, inter alia, 4 J.

---

[7] Foxy Lady agrees that the mark may be suggestive. *See* Dkt. 38 at 12 (arguing that the mark is either arbitrary or suggestive).

ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT - 13

Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 26:25 at 39 (4th ed. 2003)). The court in *Brennan's* reasoned:

> We do not doubt that Brennan's New Orleans's history is notable. But virtually all the articles and reviews discuss Brennan's New Orleans in the context of the City of New Orleans or a trip to New Orleans. This evidence in no way demonstrates that potential diners in New York City who find the word Brennan's on a restaurant awning will have any reason to think the restaurant is connected with Brennan's New Orleans, or even will have heard of Brennan's New Orleans. This is especially true because Brennan's New Orleans has not expanded in or near New York, defendant Terrance Brennan has his own reputation in New York, and Brennan is a common name.

*Id.* While the length of Foxy Lady's use of its mark may increase its strength in the markets it functions and has a meaningful reputation in, it remains a presumptively weak mark in Western Washington, where consumers are not likely to expect to find coffee kiosks sponsored by strip clubs from the other side of the country. This factor weighs against a finding of likelihood of confusion.[8]

The Court finds that consideration of the above factors is sufficient to justify a finding of no likelihood of confusion. *See Brookfield*, 174 F.3d at 1054 ("[I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the [*Sleekcraft*] factors."). Accordingly, the Court denies Foxy Lady's motion as to its Lanham Act trademark infringement, common law trademark infringement, unfair competition, and Washington CPA claims. *See* Dkt. 38 at 14 (noting that these claims all use the trademark infringement standard).

      b.  *Cancellation of Foxy Lady's Trademarks*

---

[8] At certain points in its motion, Foxy Lady curiously compares itself to McDonald's and American Airlines and argues that Foxy Lady Coffee's conduct is "akin to . . . an upstart . . . open[ing] 'McDonald's Turkey-Burgers.'" Dkt. 38 at 12–13. If anything, this attempted analogy underscores the Court's reasoning regarding geographic isolation; McDonald's does business throughout the country and *actually* has a meaningful nationwide reputation. Therefore, such an "upstart" could not reasonably argue that it did not share a consumer base with McDonald's.

ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT - 14

Foxy Lady also moves for cancellation of Foxy Lady Coffee's marks for FOXY LADY LATTE (U.S. Reg. No. 5,427,417) and FOXY LADY CAFÉ (U.S. Reg. Nos. 5,427,417 and 5,417,545) under the Lanham Act. *See* 15 U.S.C. § 1064.

"Cancellation of registration is proper when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing." *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 348 (9th Cir. 1984). The second element is clearly met. *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir. 2008) (acknowledging that "ownership of an unregistered trademark . . . is sufficient to establish standing under the Lanham Act"). Foxy Lady argues for cancellation based on both likelihood of consumer confusion and because Foxy Lady Coffee committed fraud on the USPTO when it registered the marks. The Court considers each ground in turn.

        i.    *Likelihood of Confusion*

While trademark cancellation claims under the Lanham Act also generally use the *Sleekcraft* test to determine likelihood of confusion, *see Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 835–36 (C.D. Cal. 2018), the geographic proximity of the businesses at issue has "little relevance" to cancellation claims, *see San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 495 (9th Cir. 2023) (acknowledging, in applying the "reasonable apprehension" test to determine whether a controversy exists in a declaratory judgment action regarding trademark infringement, that, unlike for infringement claims, "'geographical distance between the present locations of the respective businesses of the two parties has little relevance' in a cancellation petition alleging a likelihood of confusion" (quoting *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1568–69 (Fed. Cir. 1983)).

Nevertheless, the Court concludes that, while a closer call, Foxy Lady still has not shown a likelihood of confusion (even without considering the geographical distance between the

ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT - 15

businesses). First, the Court incorporates its conclusions from above and its order denying Foxy Lady's first motion for default judgment regarding the two most important factors: similarity and proximity of the goods; thus, the Court holds the similarity factor weighs against Foxy Lady and the proximity of goods factor weighs "slightly in favor" of Foxy Lady. *See* Dkt. 20 at 12–13. As to strength of the mark, the Court incorporates its above analysis except for its discussion of the strength of the mark in the "relevant market"; the Court concludes that this factor is neutral, given that the mark, being suggestive, is presumptively weak, but Foxy Lady has presented some evidence that it has been made stronger because of the length of its use over 45 years. *See Brookfield*, 174 F.3d at 1058 (district court did not clearly err in classifying a suggestive mark as weak where, despite providing evidence of its length of use, the plaintiff did not "come forth with substantial evidence establishing the [mark's] widespread recognition"). The Court also incorporates, in full, its determinations above regarding marketing channels (namely, that shared internet usage on its own does not show this factor weighs in favor of likelihood of confusion and there are no meaningful allegations or evidence of market convergence) and concludes that this factor weighs against Foxy Lady. The Court also incorporates its holding above regarding the "likelihood of expansion" factor; even putting aside the parties' geographical distance, Foxy Lady has no "concrete," non-conclusory allegations of expansion plans or that the "existence of the allegedly infringing mark is hindering" those plans. *See Surfvivor Media*, 406 F.3d at 634.

   The Court also considers other factors that it did not deem necessary to reach for the infringement claim. As to the "degree of care" factor, Foxy Lady correctly argues that "Plaintiff's and Defendant's services are inexpensive, which means consumers exercise less

care."[9] Dkt. 38 at 13 (citing *Brookfield*, 174 F.3d at 1060). This factor weighs in favor of Foxy Lady. Foxy Lady also argues that the "intent" factor—which as it acknowledges, the Ninth Circuit has said is of "minimal importance," *GoTo.com*, 202 F.3d at 1208—weighs in its favor because Foxy Lady Coffee chose a similar mark to sell similar goods; however, this allegation does not necessarily imply Foxy Lady Coffee's intent to appropriate, which is an issue of fact. The Court regards this factor as especially insignificant in this posture. Finally, as to evidence of actual confusion, it is understandable that Foxy Lady does not have such evidence given the inability to conduct discovery; this factor is neutral. *See M.I.B. Grp. LLC v. Aguilar*, No. 5:23-cv-01597-SVW-SHK, 2024 WL 3857540, at *12 (C.D. Cal. July 16, 2024) (citing *JL Bev. Co.*, 828 F.3d at 1111).

The Court finds that Foxy Lady has not done enough to obtain a default judgment on its cancellation claim through a showing of likelihood of consumer confusion. While "[t]he *Sleekcraft* factors are not mechanically tallied," most factors still either weigh against Foxy Lady or are neutral.

        ii.    Fraud

To cancel a trademark upon a showing of fraud, a plaintiff must show "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation;

---

[9] Foxy Lady submits that "[a] consumer is not shopping around for a place for a beer, or a meal served by a scantily clad model. However, a consumer aware of a senior user's reputation is likely to allow that to guide them to a similarly or identically named establishment offering the same goods and services." Dkt. 38 at 13. The former proposition would undoubtedly come as a surprise to the innumerable businesses across the country that offer those very services. And the (apparent) suggestion that no consumer would ever intentionally patronize Foxy Lady Coffee's cafes and kiosks (in Washington) unless they confuse it for the Foxy Lady strip club (in Rhode Island) only serves to underscore that Foxy Lady may be wise to reconsider its continued prosecution of these claims.

ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT - 17

(4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms*, Inc., 738 F.3d 1085, 1097 (9th Cir. 2013). "The question is not whether the statement is factually false, but whether the applicant subjectively believed it was false at the time he or she made the representation." *Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 967 (D. Nev. 2010) (citing *Stanfield v. Osborne Indus., Inc.,* 52 F.3d 867, 874 (10th Cir. 1995)). "[T]he burden of proving that a party fraudulently procured a trademark registration is heavy," *Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1444 (9th Cir. 1990), requiring a showing of fraud by clear and convincing evidence, *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1020 (9th Cir. 2018). "There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009).

Additionally, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to cancellation claims based on fraud. *See Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1233 (C.D. Cal. 2007). Under the Rule, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted).

Foxy Lady argues that Foxy Lady Coffee committed fraud by only disclosing to the USPTO that it planned to use its marks for "coffee and coffee shops" (Dkt. 38 at 15; Dkt. 27 ¶ 26) but not for its "additional services," Dkt. 27 ¶ 26. Foxy Lady alleges, "[u]pon information and belief," that "Defendant did not disclose these additional services to the USPTO because it knew that doing so would alert Plaintiff to Defendant's infringing activities and would result in Defendant's applications to be rejected and denied by the USPTO." *Id.* Resolving doubts in favor of Foxy Lady Coffee, the Court cannot conclude that the USPTO reasonably relied on this alleged misrepresentation in deciding to register the marks when the Court has already decided

ORDER DENYING SECOND MOTION FOR DEFAULT JUDGMENT - 18

that, considering the marks in the context of the goods and services they are tied to, the concurrent use of the marks does not portend a likelihood of consumer confusion. *See* 15 U.S.C. § 1052(d) (providing that marks may not be registered if, inter alia, they would "likely . . . cause confusion"); *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1111 (9th Cir. 2006) ("Under § 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), the test for trademark registration uses the same 'likelihood of confusion' standard as the test for trademark infringement.").

### III. CONCLUSION

Having failed to show the second and third *Eitel* factors for all of its claims, the Court DENIES Foxy Lady's second motion for default judgment and permanent injunction, and its request for attorney's fees and costs therein. Dkt. 38. *See Cripps*, 980 F.2d at 1268; *Eisenmann SE*, 2021 WL 4243399, at *11.

Moreover, because the Court has already granted Foxy Lady leave to amend and re-file its default judgment motion, the Court declines to sua sponte grant further leave to amend and DISMISSES this case without prejudice. *See, e.g.*, *Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*, 486 F. App'x 671 (9th Cir. 2012) (affirming district court's denial of motion for default judgment and dismissal of complaint for failure to state a claim); *Bank of N.Y. Mellon v. Loyo-Morales*, No. 2:18-cv-00308-RFB-VCF, 2019 WL 3778056, at *2 (D. Nev. Aug. 12, 2019) (dismissing case after denying motion for default judgment without leave to amend); *cf. Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in denying subsequent motions to amend is particularly broad" (citation and internal quotation marks omitted)).

Dated this 29th day of August, 2024.

Tiffany M. Cartwright
United States District Judge